IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                              PLAINTIFF/RESPONDENT

V.                          Case No. 2:15-CR-20025-PKH-MEF-10

ARMANDO PICAZO                                        DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Defendant/Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed on October 26, 2016. (Doc. 339) The United States filed its response on November 21, 2016. (Doc. 346) Defendant/Petitioner did not file a reply. Also before the Court is Defendant/Petitioner's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) filed on January 9, 2017. (Doc. 347) The United States was not ordered to file a response to that motion. These matters are ready for report and recommendation.

### I. Background

On September 16, 2015, the Defendant/Petitioner, Armando Picazo ("Picazo"), was named in an Indictment charging him with conspiracy to distribute methamphetamine (Count One), and aiding and abetting in the possession of 50 grams or more of actual methamphetamine with the intent to distribute (Count Seven). (Doc. 17) Picazo was arrested on September 23, 2015, and he appeared for arraignment before the Hon. Mark E. Ford, United States Magistrate Judge, on September 25, 2015, at which time he entered a not guilty plea to the Indictment. (Doc. 60) Jess Marvin Honeycutt ("Honeycutt"), a CJA Panel attorney, was appointed to represent Picazo. (Docs. 60, 105)

On January 19, 2016, Picazo appeared with counsel before the Hon. P. K. Holmes, III, Chief

United States District Judge, for a change of plea hearing. (Doc. 156) A written Plea Agreement (Doc. 157) was presented to the Court, and Picazo pleaded guilty to Count Seven of the Indictment charging him with aiding and abetting in the possession of 50 grams or more of actual methamphetamine with the intent to distribute.[1] (Doc. 156) The Court tentatively approved the Plea Agreement and ordered a Presentence Investigation Report ("PSR"). (Doc. 156)

An initial PSR was prepared by the United States Probation Office on March 31, 2016. (Doc. 180) On April 13, 2016, Picazo advised that he had no objections to the PSR. (Doc. 206) On April 18, 2016, the Government advised that it had no objections to the PSR. (Doc. 219)

On May 3, 2016, a final PSR was submitted to the Court. (Doc. 237) The final PSR determined that Picazo was accountable for 4,976.13 grams of actual methamphetamine and 2,285.87 grams of a mixture of methamphetamine, which converts under the Guidelines to a total of 104,094.34 kilograms of marijuana equivalent. (Doc. 236, ¶¶ 48-51) Based on that drug quantity, Picazo's base offense level was determined to be 38. (Doc. 236, ¶ 57) A two-level enhancement was assessed for specific offense characteristics – possession of a dangerous weapon (firearm). (Doc. 236, ¶¶ 44, 51, 58) Another two-level enhancement was assessed for Picazo's aggravating role in the offense as an organizer, leader, manager, or supervisor in the criminal activity. (Doc. 236, ¶¶ 51, 60) After a three-level reduction for acceptance of responsibility, Picazo's total offense level was determined to be 39. (Doc. 236, ¶¶ 64-66). Picazo had a criminal history score of zero, placing him in criminal history category I. (Doc. 236, ¶ 76) The statutory minimum term of imprisonment for the offense of conviction is 10 years and the maximum term of imprisonment is life. (Doc. 236, ¶

---

[1] Picazo also entered a guilty plea to Count Two of the Indictment filed against him in a related case, No. 2:15-cr-20032-001, charging him with aiding and abetting in the possession of 50 grams or more of actual methamphetamine with the intent to distribute.

105)  Based upon a total offense level of 39 and a criminal history category of I, Picazo's advisory

Guidelines range was determined to be 262 to 327 months imprisonment.  (Doc. 236, ¶ 106)

Picazo appeared for sentencing on June 22, 2016.  (Doc. 292)  The Court made inquiry that

Picazo was satisfied with his counsel; the PSR was reviewed and adopted; final approval of the Plea

Agreement was expressed; Picazo and his counsel were afforded the opportunity to speak and make

a statement; and, the Court then imposed a below-Guidelines sentence of 240 months imprisonment,

five years supervised release, no fine, and a $100.00 special assessment.[2]  (Doc. 292)  Judgment was

entered by the Court on June 22, 2016.  (Doc. 293)

Picazo did not pursue a direct appeal from the Judgment.

On October 24, 2016, Picazo filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody (the "motion").  (Doc. 339)  The motion

argues: (1) ineffective assistance of counsel for not challenging the two-level enhancement for

possession of a firearm; (2) ineffective assistance of counsel for not challenging the two-level

enhancement for being an organizer, leader, manager, or supervisor in the criminal activity; and, (3)

that Picazo is entitled to relief pursuant to Amendment 794 to U.S.S.G. § 3B1.2.[3]  (Doc. 339, pp. 4-

8)  The United States' response to the motion was filed on November 21, 2016.  (Doc. 346)  Picazo

did not file a reply.

On January 9, 2017, Picazo filed a Motion for Reduction of Sentence Pursuant to 18 U.S.C.

§ 3582(c)(2), in which he re-states his argument that he is entitled to relief pursuant to Amendment

---

[2] The Court imposed an identical sentence in No. 2:15-cr-20032-001 and ordered that the sentences shall run concurrently.

[3] Picazo asserts a fourth ground based on ineffective assistance of counsel, but it is a generalized argument that incorporates his other arguments.  (Doc. 339, p. 8)

794 to U.S.S.G. § 3B1.2.  (Doc. 347)

## II.  Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).  A thorough review of Picazo's § 2255 motion and the files and records of this case conclusively shows that Picazo is not entitled to relief, and the undersigned recommends the denial and dismissal of his § 2255 motion with prejudice without an evidentiary hearing.  The undersigned also recommends the denial and dismissal of Picazo's motion for sentence reduction.

### A.  Timeliness

A one year period of limitation applies to motions under 28 U.S.C. § 2255.  This period runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized

by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or, (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2255(f).

An un-appealed criminal judgment becomes final when the time for filing a direct appeal expires.  *Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n. 2 (8th Cir. 2008).  The Judgment in this case was entered on June 22, 2016.  (Doc. 45)  Had Picazo wished to file an appeal, he was required to do so within 14 days.  *See* Fed. R. App. P. 4(b)(1)(A)(i).  Picazo did not file an appeal, and his conviction thus became final on July 6, 2016.  *See Murray v. United States*, 313 Fed. App'x 924 (8th Cir. 2009).  From that date, Picazo had one year, or until July 6, 2017, to timely file his § 2255 habeas petition.  Picazo filed his § 2255 motion on October 24, 2016, well within the one year limitations period.

### B.  Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, Picazo must demonstrate both that counsel's performance was deficient and that counsel's deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases."  *Id*. at 688.  Review of counsel's performance is deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689.  To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at

694.

### 1.  Failure to Challenge Possession of Firearm Enhancement

Picazo argues in Ground One of his § 2255 Motion that his counsel was ineffective for not challenging the two-level enhancement for possession of a firearm in connection with the commission of the offense.  (Doc. 339, p. 4)  For the supporting facts, Picazo merely alleges that "there were no 'substantial' or 'specific' findings that [he] possessed a firearm;" that it was his wife and co-defendant, Maria D. Jesus Martinez, who possessed the firearm; and, that "counsel prejudiced in his enhancement 2-two-point sentence."  (Doc. 339, p. 4)  The argument is conclusory, contrary to the record, and lacks merit.

Vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255.  *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986).  *See also Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (solemn declarations in open court carry a strong presumption of verity; subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal); *Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal); *Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001) (brief, conclusory allegations that failed to cite to the record insufficient to support claims of ineffective assistance of counsel). Even *pro se* litigants must state specific facts in support of their claims regarding counsel's allegedly deficient performance.  *See Saunders v. United States*, 236 F.3d 950, 952-53 (8th Cir. 2001).  Picazo does not.  Aside from claiming that the firearm belonged to his wife, he completely fails to specify *what* evidence existed that, if counsel had presented it at sentencing, would have demonstrated that Picazo did not possess a firearm in connection with the criminal activity.

-6-

The two-level specific offense characteristic enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) concerns whether "a dangerous weapon (including a firearm) was possessed."  The enhancement "reflects the increased danger of violence when drug traffickers possess weapons."  U.S.S.G. § 2D1.1(b)(1), Application Note 11.

To prove that the firearm was "possessed," the Government need not prove ownership of either the weapon or the premises on which it is found for a § 2D1.1(b)(1) enhancement to apply. *See United States v. Payne,* 81 F.3d 759, 762 (8th Cir.1996); *see also United States v. Weaver,* 906 F.2d 359, 360 (8th Cir.1990).  Also, "[i]t is not necessary that an individual be observed using the weapon, and either actual or constructive possession is sufficient, i.e., the individual must have exercised 'ownership, dominion, or control' either over the firearm or the premises on which it is found."  *Payne,* 81 F.3d at 762.

Mere possession of a firearm, however, is not sufficient to trigger the enhancement, as the Government must prove by a preponderance of the evidence a connection between the firearm and the criminal activity.  *See United States v. McMurray,* 34 F.3d 1405, 1416 (8th Cir. 1994) (citing *United States v. Khang,* 904 F.2d 1219, 1223 (8th Cir. 1990)).  The two-level enhancement is proper unless it is clearly improbable that the weapon was connected to the offense.  *Id*. (citing *United States v. Maxwell,* 25 F.3d 1389, 1399 (8th Cir. 1994)).  In *McMurray,* the Eighth Circuit held that the Government met its burden of establishing the nexus between the gun and the drug conspiracy where the gun was found near drug paraphernalia.  *Id*.; *see also*, *United States v. Savage,* 414 F.3d 964, 967 (8th Cir. 2005) (gun in bedroom of apartment where defendant weighed and sold methamphetamine was readily accessible during defendant's drug dealing activities); *United States v. Marshall,* 940 F.2d 382, 383 (8th Cir. 1991) (enhancement proper where loaded weapons were

found near drug paraphernalia); *United States v. Duke*, 935 F.2d 161 (8th Cir. 1991) (enhancement proper where search of defendant's home uncovered cocaine-like substance, scales, and revolver).

Upon his arrest, Picazo advised investigators that there was a firearm, a Jennings Model J-22 pistol, located inside a dresser in the master bedroom of his home.  (Doc. 236, ¶ 44)  During the search of Picazo's residence, investigators also found plane tickets confirming Picazo's travel from Las Vegas; miscellaneous paperwork; two rolls of bulk plastic wrap; a box of sandwich baggies; a notebook ledger containing various phone numbers, aliases, dollar amounts owed up to $73,500, and "Jose 3, 33,000" (believed to mean Mendez, 3 pounds of meth, purchase price of $33,000); a bus receipt showing Picazo traveled from Fort Smith to Rio Grande on May 19, 2015; digital scales; and, multiple cell phones.  (Doc. 236, ¶ 45)  In a post-Miranda interview, Picazo's wife and co-defendant reported to investigators that the firearm which was located had been given to Picazo by a friend for protection.  (Doc. 236, ¶ 46)  Picazo did not object to these facts contained in the PSR, nor did he object to the two level enhancement under U.S.S.G. § 2D1.1(b)(1).  "A fact in a PSR to which the defendant has not specifically objected is a fact admitted by the defendant."  *See United States v. Abrica-Sanchez*, 808 F.3d 330, 334 (8th Cir. 2015) (quoting *United States v. White*, 447 F.3d 1029, 1032 (8th Cir. 2006)).

Contrary to Picazo's vague argument, these facts constitute substantial proof of a nexus between the firearm and Picazo's criminal activities.  In light of the evidence, counsel's failure to object to the two-level enhancement pursuant to § 2D1.1(b)(1) does not rise to the level of ineffective assistance of counsel.  In *Toledo v. United States*, 581 F.3d 678 (8th Cir. 2009), defendant's counsel initially objected to the PSR's classification that defendant be sentenced as an armed career criminal.  That attorney left the Office of the Public Defender, and Toledo was

appointed new counsel. Toledo's new counsel withdrew the objections to the PSR, including the objection to Toledo's status as an armed career criminal. That decision was challenged in Toledo's § 2255 proceeding. Concluding that Toledo's counsel simply withdrew objections that had no legal support, the Eighth Circuit stated, "[i]t is not ineffective assistance of counsel to withdraw objections that have no support in the law." *Id.*, 581 F.3d at 681 (internal citation omitted). *See also*: *Cassidy v. United States*, 12 F.3d 1102 (8th Cir. 1994) (unpublished opinion) (defendant's claim of ineffective assistance of counsel based on counsel's withdrawal of an objection was properly denied as there was no prejudice to defendant since there was no reasonable probability that the objection would have prevailed); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir.1999) (attorney's failure to raise a meritless argument cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue); *United States v. Flores*, 2006 WL 1649317 (N.D. Iowa 2006) (unpublished opinion) (no ineffective assistance of counsel for counsel withdrawing objection to PSR where PSR was correct). Since there was no reasonable probability that any objection to the two-level § 2D1.1(b)(1) enhancement would have succeeded, Picazo was not prejudiced by his counsel's failure to make such a meritless objection.

Moreover, even if an objection had been made, the Government would have been able to present evidence of the nexus between the firearm and Picazo's criminal activity at sentencing. In Picazo's Plea Agreement, the Government expressly reserved its right to "call witnesses and introduce evidence in support of the [PSR]." (Doc. 157, ¶ 19(b)) The Eighth Circuit has previously recognized the significance of this right in such a setting. *See, e.g., LaRouche v. United States*, 210 F.3d 379 (8th Cir. 2000) (unpublished opinion) (had counsel objected to the facts set forth in the

PSR, the plea agreement would have allowed the Government to present evidence of those facts at sentencing), citing *United States v. Apfel*, 97 F.3d 1074, 1077 (8th Cir. 1996) (rejecting ineffective assistance claim for lack of prejudice where defendant alleged his trial counsel failed to object to fact which resulted in enhanced sentence, because defendant did not show reasonable probability that Government would have been unable to prove that fact, had it been disputed).  Thus, Picazo has failed to show any prejudice resulting from his counsel's allegedly deficient performance.

Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts are not bound by mechanistic rules in evaluating ineffective assistance of counsel claims, *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (no need to address the performance prong if petitioner does not affirmatively prove prejudice).  Thus, the court need not determine whether a defendant's counsel acted reasonably if a defendant has failed to show prejudice, as a lack of prejudice can be dispositive.  *See United States v. DeRoo*, 223 F.3d 919, 925 (8th Cir. 2000) (citing *Apfel*, 97 F.3d at 1076).  If it is easier to dispose of an ineffectiveness claim for lack of prejudice, the court should do it.  *Strickland*, 466 U.S. at 697; *Whitehead v. Dormire*, 340 F.3d 532, 537 (8th Cir. 2003).

### 2.  Failure to Challenge Aggravating Role Enhancement

Picazo also argues, in Ground Two of his § 2255 motion, that his counsel was ineffective "for not challenging the two-point enhancement [he] received for being a manager or supervisor under § 3B1.1(c)."  (Doc. 339, p. 5)  This claim is also conclusory, contrary to the record, and without merit.

Picazo does not specify what defense counsel could have done to successfully challenge the sufficiency of the evidence supporting the § 3B1.1(c) enhancement.  As with his first ground for

relief discussed above, this claim also presents no factual support whatsoever and is subject to summary dismissal.  *Hollis*, 796 F.2d at 1046; *Blackledge*, 431 U.S. at 74; *Smith*, 677 F.2d at 41; *Bryson*, 268 F.3d at 562; *Saunders*, 236 F.3d at 952-53.  The record amply demonstrates that the two-level aggravating role enhancement for being an organizer, leader, manager, or supervisor of the criminal activity was properly applied to Picazo.

Notably, one of Picazo's co-defendants, Ascencion Salas-Macias ("Salas-Macias"), alleged in his § 2255 motion that "it would seem more appropriate that [co-defendant] Armando Picazo receive an aggravating role in the offense," and that Salas-Macias "was a lower level dealer that dealt in ounce quantities that he obtained from Picazo."[4]

The facts set forth in the PSR tell the following story.

From at least as early as November 1, 2014, to June 17, 2015, state and federal law enforcement agencies learned that Jose E. Mendez-Alvarado ("Mendez") and other individuals were distributing large amounts of methamphetamine in the Fort Smith, Arkansas area.  (Doc. 236, ¶ 17)  Over the course of their investigation, investigators identified numerous individuals, including Picazo and his wife, Maria D. Jesus Martinez ("Martinez").  (Doc. 236, ¶ 18)  Federal investigators intercepted several communications between Mendez, Picazo, and Martinez regarding obtaining and distributing methamphetamine.  (Doc. 236, ¶¶ 19-22)  Around the first part of June 2015, Martinez, Picazo, and Mendez began making arrangements for Mendez to drive a Toyota Solara to California to pick up a large quantity of methamphetamine.  On June 5, 2015, Martinez called Mendez and asked Mendez if he could bring the Solara to Martinez's and Picazo's residence.  Martinez advised Mendez that once the Solara was filled and ready to travel to California, then she and Picazo would

---

[4] Doc. 34, pp. 1-2 in Picazo's related case, No. 2:15-cr-20032-001.

notify Mendez.  (Doc. 236, ¶ 23)  Mendez picked up the Solara and left Fort Smith on June 5, 2015.

Another co-defendant, Roxana Cardona ("Cardona"), accompanied Mendez on this trip, but she

traveled in a separate vehicle.  Mendez remained in touch with Martinez and Picazo during his trip

to California.  (Doc. 236, ¶ 24)  On June 17, 2015, federal agents set up surveillance near Interstate

40 close to Roland, Oklahoma.  Federal agents followed Mendez over the Garrison Avenue Bridge

into Fort Smith.  (Doc. 236, ¶ 25)  Once into Fort Smith, Arkansas state law enforcement officers

conducted a traffic stop on Mendez and seized approximately 11 pounds of methamphetamine.  After

Mendez's arrest, Cardona made and received unrecorded phone calls to and from Picazo's phone

number.  (Doc. 236, ¶ 26)  Testing of the suspected methamphetamine seized from Mendez indicated

the substance was 4,371.3 grams of a mixture of methamphetamine at 95% pure (or 4,152.7 grams

of actual methamphetamine), and 438.4 grams of a mixture of methamphetamine at 88% pure (or

385.8 grams of actual methamphetamine).  (Doc. 236, ¶ 27)

In August, 2015, a confidential source ("CS") informed investigators that Salas-Macias was

distributing methamphetamine in the Fort Smith, Arkansas area.  Court-authorized intercepted wire

communications indicated that Salas-Macias was in contact with Picazo.  (Doc. 236, ¶ 28)  Salas-

Macias described Mendez as a friend of "his guy" (Picazo) to the CS.  (Doc. 236, ¶ 29)

On September 15, 2015, Salas-Macias and Picazo engaged in a series of conversations

regarding the procurement of a large supply of methamphetamine.  Salas-Macias advised Picazo that

the CS would transport the methamphetamine once it arrived in the United States.  They also

discussed Picazo contacting his source of supply (SOS) and setting up a drug transaction.  (Doc. 236,

¶ 31)  On September 16, 2015, the CS advised agents that a deal could take place on September 17,

2015, and that the CS would get paid $600 per pound that he/she transported from California to

Arkansas. (Doc. 236, ¶ 32)

Picazo traveled to Las Vegas, Nevada the next day and met with his SOS to set up the forthcoming drug transaction. Picazo remained in contact with Salas-Macias during this trip, and he advised Salas-Macias that the CS would not be able to make the trip since the methamphetamine had not yet arrived in the United States. (Doc. 236, ¶ 33) Upon Picazo's return to Arkansas on September 19, 2015, Salas-Macias and Picazo discussed the time when the CS could travel to Las Vegas to pick up the methamphetamine, as well as the CS's travel expenses. (Doc. 236, ¶ 34) On September 21, 2015, the CS along with an undercover officer (UC) met with Salas-Macias at Salas-Macias' residence. Salas-Macias provided the CS with travel expenses in the amount of $1,000.00, and Salas-Macias explained to the CS that once the CS got closer to Las Vegas, Salas-Macias would provide the CS with the SOS's contact number. The CS and UC left Salas-Macias' house and began their trip to Las Vegas, Nevada. (Doc. 236, ¶ 35)

On September 22, 2015, Picazo contacted Salas-Macias to inquire whether the CS had arrived in Las Vegas. Salas-Macias replied that the CS was almost there. Picazo then provided Salas-Macias with the SOS's contact number. Salas-Macias then sent via text message the SOS's contact number to the CS. (Doc. 236, ¶ 36) The CS then placed a recorded call to the SOS, and the SOS then sent the CS a text advising of the location of the upcoming drug transaction. (Doc. 236, ¶ 37) After meeting with agents in Las Vegas, the CS and UC traveled to the location and, upon arrival, the CS met with the SOS who provided the CS with a red and white cooler containing six packages wrapped in plastic and carbon paper containing suspected methamphetamine. (Doc. 236, ¶ 39) The six packages later field tested positive for the presence of methamphetamine, and they weighed a total of 2,724 grams, which equates to approximately six pounds. (Doc. 236, ¶ 41) One

of the packages containing methamphetamine was sent to the Las Vegas Metropolitan Police Department Forensic Laboratory for analysis and the results indicated the substance was 438.13 grams of a mixture of methamphetamine at 100% pure, or 438.13 grams of actual methamphetamine. The remaining 2,285.87 grams was not tested for purity. (Doc. 236, ¶ 42) After the drug transaction, the CS reported back to Salas-Macias. Picazo and Salas-Macias then engaged in a series of conversations indicating that the CS was supposed to pick up more than six pounds of methamphetamine. (Doc. 236, ¶ 43)

Picazo did not object to the above-stated facts in the PSR. As previously noted, a fact in a PSR to which the defendant has not specifically objected is a fact admitted by the defendant. *See Abrica-Sanchez*, *supra*.

Much of this series of drug trafficking activities is similarly set forth in the factual basis section of the Plea Agreement that Picazo entered into. (Doc. 157, ¶¶ 2(a)-(h))

Significant to the analysis of the present issue, Picazo and his wife coordinated arrangements for Mendez to drive to California to pick up a large quantity of methamphetamine. Picazo remained in touch with Mendez during the trip to California; and, following the arrest of Mendez during the return trip, the other driver, Cardona, made and received calls to and from Picazo's phone. Picazo and Salas-Macias then jointly planned a trip to Las Vegas, Nevada to obtain another large quantity of methamphetamine and to import it to Arkansas. Picazo flew to Las Vegas to meet with his SOS for the drug transaction, and he determined the timing of the trip. Picazo checked with Salas-Macias about the CS's progress during the trip to Las Vegas, and Picazo determined when to provide the contact information for his SOS to the CS. After the drug transaction, Picazo and Salas-Macias engaged in a series of conversations indicating that the CS was supposed to pick up more than six

pounds of methamphetamine.

Picazo faults his counsel for not objecting to the two-level enhancement pursuant to U.S.S.G. § 3B1.1 for Picazo being an organizer, leader, manager, or supervisor of the criminal activity involved in this case.  Given the admitted facts set forth above, it would have been futile to do so.

*Application Note 2* to U.S.S.G. § 3B1.1 states that "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants."  Here, that is unquestionably true, as Picazo directed Martinez, Mendez, and Salas-Macias in their activities in connection with the criminal activity.

*Application Note 4* to § 3B1.1 sets forth various factors a court should consider in determining whether to impose an enhancement for a defendant's aggravating role in an offense, and among those factors are: the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.  The uncontested facts set out in Picazo's Plea Agreement and in the PSR establish the presence of many of these factors, including Picazo's involvement in large scale drug trafficking activities in Arkansas; his planning and coordination of efforts to transport two large shipments of methamphetamine into Arkansas; his involvement with Martinez, Mendez, and Salas-Macias in the planning and organization of the drug trafficking activities; and, his degree of control and authority over other's activities in the offense conduct.

 Based on the record, the Court's finding that Picazo was subject to a two-level enhancement under U.S.S.G. § 3B1.1 as an organizer, leader, manager, or supervisor of the criminal activity was supported by substantial evidence.  *See, e.g., United States v. Robertson*, 519 F.3d 452 (8th Cir.

2009) (leadership role affirmed where defendant exercised decision-making authority over both broad outline and specific details of scheme to transport more than 100 kilograms of marijuana from Arizona to Minnesota); *United States v. Rutter*, 897 F.2d 1558 (10th Cir. 1990) (evidence that defendant had recruited person to be "mule" to supply additional cocaine supported enhancement for aggravating role); *United States v. Bonilla-Filomeno*, 579 F.3d 582 (8th Cir. 2009) (two-level enhancement upheld where defendant recruited two co-conspirators to assist in picking up vehicle, coordinated the pick up, offered one co-conspirator $300 to sign for the vehicle, and cocaine was hidden in the vehicle); *United States v. Maejia*, 928 F.2d 810 (8th Cir. 1991) (enhancement as organizer affirmed where defendant hired one individual to drive truck containing cocaine, controlled movements of truck, paid truck driver $2,000 for two days of service, and defendant had been under investigation for extensive high-volume cocaine trafficking); and, *United States v. Cole*, 657 F.3d 685 (8th Cir. 2011) (three-level enhancement affirmed where defendant directed and controlled one other individual as part of the conspiracy, defendant handled large quantities of drugs and money, and defendant transported and/or directed the transportation of drugs).

Since there was no reasonable probability that any objection to the two-level § 3B1.1 enhancement would have succeeded, Picazo was not prejudiced by counsel's failure to object to the two-level enhancement pursuant to § 3B1.1. Failure to demonstrate prejudice is dispositive of this claim. *Strickland*, 466 U.S. at 697.

### C. Picazo's Guidelines Claim is Procedurally Defaulted

The Government argues that even if there had been an entitlement to a mitigating role adjustment, Picazo cannot raise it in a § 2255 motion. (Doc. 346, p. 14) The undersigned agrees.

The United States Supreme Court has "long and consistently affirmed that a collateral

-16-

challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (internal citations omitted).  Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).  The circumstances under which a guilty plea may be attacked on collateral review are strictly limited, and "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).  Even the voluntariness and intelligence of a guilty plea can be attacked on collateral review *only* if first challenged on direct review, as "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal quotation marks and citation omitted).  "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id*.

    In this case, Picazo pleaded guilty and did not pursue any relief on direct appeal.  By failing to appeal, Picazo procedurally defaulted the Guidelines claim he now raises.

    This procedural default may be excused only if Picazo "can show both (1) a cause that excuses the default, and (2) actual prejudice from the errors that are asserted." *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997) (quoting *Bousley v. Brooks*, 97 F.3d 284, 287 (8th Cir. 1996)); *Apfel*, 97 F.3d at 1076; and, *Frady*, 456 U.S. at 167-68.  "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499

U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

Picazo makes no such showing here. He fails to demonstrate how the factual or legal basis for his claim was not reasonably available to him in time to pursue relief on direct appeal. The underlying facts were contained in Picazo's Plea Agreement and reported in his PSR, thus the factual basis for the aggravating role enhancement, or a mitigating role reduction, was known and available prior to sentencing.

Amendment 794 to U.S.S.G. § 3B1.2, cited by Picazo, became effective on November 1, 2015, many months prior to the preparation of his PSR on March 31, 2016, and prior to his sentencing on June 22, 2016. Thus, Picazo had the benefit of Amendment 794 at the time of his sentencing; however, as discussed above, rather than being entitled to a mitigating role reduction under § 3B1.2, the facts instead supported a two-level enhancement under § 3B1.1 for Picazo's aggravating role in the offense as an organizer, leader, manager, or supervisor in the criminal activity. Under such circumstances, any alleged failure to consider all of the factors listed in Amendment 794 cannot be said to be fundamentally unfair or constitute a miscarriage of justice sufficient to form the basis for collateral relief under § 2255.

Further, there is no assertion by Picazo that some interference by government officials, or some external impediment, prevented him from raising his claim on direct appeal.

Since Picazo has not shown adequate cause to overcome the procedural bar in his case, the Court need not consider the issue of actual prejudice. *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir. 1998) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). Additionally, Picazo neither claims nor demonstrates miscarriage of justice through actual innocence. "Without any new evidence of innocence, even the existence of a concededly meritorious

-18-

constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow

a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct.

851, 130 L.Ed.2d 808 (1995).

Picazo has failed to demonstrate "cause and prejudice" or a "miscarriage of justice" to

overcome the procedural default of the Guidelines claim he now asserts, and his § 2255 motion

should be dismissed with prejudice.

### D.  No Entitlement to Relief Under 18 U.S.C. § 3582

Picazo's has also filed a Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582.

(Doc. 347)  The motion has no merit.

A district court is authorized to modify a Defendant's sentence only in specified instances

where Congress has expressly granted the court jurisdiction to do so.  *See United States v. Blackwell*,

81 F.3d 945, 947 (10th Cir. 1996), citing *United States v. Caterino,* 29 F.3d 1390, 1394 (9th Cir.

1994) (authority to change a sentence must derive from some federal statutory authority).  18 U.S.C.

§ 3582(c) provides that a court may not modify a term of imprisonment once it has been imposed,

with three exceptions.  A court may modify a sentence: (1) in certain circumstances "upon motion

of the Director of the Bureau of Prisons," *see* 18 U.S.C. § 3582(c)(1)(A); or, (2) "to the extent

otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure,"

*see* 18 U.S.C. § 3582(c)(1)(B); or, (3) "upon motion of the defendant or the Director of the Bureau

of Prisons," or on a court's own motion, in cases where the applicable sentencing range "has

subsequently been lowered by the Sentencing Commission," *see* 18 U.S.C. § 3582(c)(2).

Picazo seeks relief under § 3582(c)(2), contending that "the NEW Amendment 794" applies

"retroactively" to his case.  This argument fails because (1) Amendment 794 was in effect at the time

of Picazo's sentencing, and (2) Amendment 794, a clarifying amendment, did not lower the sentencing range applicable to Picazo.

Picazo's motion pursuant to § 3582(c)(2) should be dismissed.

### E.  No Evidentiary Hearing Is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997), quoting from *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985).  Such are the circumstances in this case where Picazo has alleged insufficient factual and legal support for his claim.  Accordingly, the undersigned recommends the summary dismissal of Picazo' § 2255 motion without an evidentiary hearing.

### III.  Conclusion

For the reasons and upon the authorities discussed above, the undersigned concludes that: Picazo's claims of ineffective assistance of counsel are conclusory, contrary to the record, and lack merit; Picazo's Guidelines claim has been procedurally defaulted and is also unsupported by the record; and, Picazo's claim for relief pursuant to 18 U.S.C. § 3582 is without merit.  Accordingly, I recommend that Picazo' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 339) be **DISMISSED with PREJUDICE**.  I also recommend that Picazo's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582 (Doc. 347) be **DISMISSED with PREJUDICE**.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of February, 2017.

/s/ *Mark E. Ford*

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE